UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VALERIE ALCALAN-FLICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CONN'S, INC. and | § | CIVIL ACTION NO. 5:15-cv-976-XR |
| CONN APPLIANCES, INC. and | § | |
| CONN CREDIT CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**ORIGINAL ANSWER OF DEFENDANTS TO PLAINTIFF'S
FIRST AMENDED COMPLAINT AND APPLICATION
FOR TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Conn's, Inc., Conn Appliances, Inc. and Conn Credit Corporation, Inc., incorrectly sued as Conn Credit Corporation, file this Original Answer to Plaintiff Valerie Alcalan-Flick's ("Plaintiff") First Amended Complaint and Application for Temporary Injunction and Permanent Injunction ("Complaint"). Conn's Inc., Conn Appliances, Inc. and Conn Credit Corporation, Inc. will hereinafter collectively be referred to as "Conn's" or "Defendants".

**JURISDICTION AND VENUE**

1.     This action arises out of Defendants' repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et. seq. ("TCPA"), Texas Business & Commerce Code, Chapter 305, et seq. and Defendants' invasions of the Plaintiff's personal privacy.

**ANSWER:     Conn's denies the allegations in Paragraph 1 of the Complaint.**

2.     Supplemental jurisdiction exits pursuant to 28 U.S.C. § 1367.

**ANSWER:   The allegations in Paragraph 2 state conclusions of law to which no response is required and thus denies the allegations.**

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that one or more of the Defendants transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

**ANSWER:   Conn's does not contest venue at this time.**

### PARTIES

4.      Plaintiff Valerie Alcalan-Flick (hereinafter "Plaintiff") is an adult individual, presently residing in San Antonio, Texas and is a "Person" as defined by 47 U.S.C. § 153(39).

**ANSWER:   Conn's admits Plaintiff is an individual, but lacks information sufficient to respond to the remaining allegations in Paragraph 4 of the Complaint and, therefore, denies them.**

5.      Defendant Conn's, Inc. ("CI") is a Delaware corporation with its principal place of business at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381, which may be served with process by serving its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**ANSWER:   Conn's, Inc. ("CI") admits the allegations in Paragraph 5 of the Complaint.**

6.      Defendant Conn Appliances, Inc. ("CAI") is a Texas corporation with its principal place of business at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381, which may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

2

**ANSWER:    Conn Appliances, Inc. ("CAI") admits the allegations in Paragraph 6 of the Complaint.**

7.      Defendant Conn Credit Corporation ("CCC") is a Texas corporation with its principal place of business at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381, which may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**ANSWER:    Conn Credit Corporation, Inc., incorrectly sued as Conn Credit Corporation ("CCC"), admits the allegations in Paragraph 7 of the Complaint.**

8.      Defendants CAI and CCC are wholly-owned subsidiaries of Defendant CI (Defendants are collectively referred to herein as "Conn's" or "Defendants").

**ANSWER:    Conn's admits the allegations in Paragraph 8 of the Complaint.**

9.      Whenever it is alleged herein that Defendants did any act, it is meant that:

    A.      The Defendants performed or participated in the act, and/or

    B.      The Defendants' officers, directors, agents, trustees or employees performed or participated in the act on behalf of and under the authority of Defendants.

**ANSWER:    The allegations in Paragraph 9 of the Complaint contain no facts and thus are improper under the Federal Rules of Civil Procedure.  To the extent a response is required, Conn's denies the allegations.**

### FACTS

*A.      The Telephone Consumer Protection Act, 47 U.S.C. § 227*

10.      In an effort to protect consumers against invasive and unauthorized telemarketing calls, Congress enacted the Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243,

3

105 Stat. 2394, *codified as amended* at 47 U.S.C. § 227, to "ban all computerized calls to the home"—including "all autodialed calls * * * [to] cellular phones"— "unless the called party consents to receiving them, or unless the calls are made for emergency purposes." S. Rep. No. 102-178, at 6 (1991); *see also Mims v. Arrow Fin. Servs*., LLC, 132 S. Ct. 740, 742 (2012) (the TCPA restricts "computerized calls to private homes" and other "abuses of telephone technology").

**ANSWER:    The allegations in Paragraph 10 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations to the extent they are inconsistent with or contrary to the TCPA, its legislative history, or any of the case law interpreting the TCPA, including the case identified in Paragraph 10 of the Complaint.**

11.    The problems Congress identified have grown only worse in recent years as the use of automated calls has exploded. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) ("2003 TCPA Order"), 18 FCC Rcd. 14014, Ifif 2, 8.

**ANSWER:    Conn's lacks information sufficient to respond to the allegations in Paragraph 11 of the Complaint and, therefore, denies them.**

12.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

4

**ANSWER:    The allegations in Paragraph 12 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's admits that Paragraph 12 of the Complaint accurately sets forth the definition of an ATDS under the TCPA.**

13.    The TCPA makes it unlawful:

"(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

***

"(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]"

*Id.* § 227(b)(1)(A)(iii).

**ANSWER:    The allegations in Paragraph 13 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's admits that Paragraph 13 of the Complaint accurately sets forth the language in Section 227(b)(1)(A)(iii) of the TCPA.**

14.    A person or entity may bring an action to enjoin a violation of 47 U.S.C. § 227(b)(1)(A)(iii). Id. at § 227(b)(3).

**ANSWER:    The allegations in Paragraph 14 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations in Paragraph 14 of the Complaint to the extent they are inconsistent with or contrary to the terms of the TCPA.**

15.    A person or entity can bring an action to recover the greater of actual damages or $500.00 for each violation of 47 U.S.C. § 227(b)(1)(A)(iii). *Id.*

5

**ANSWER:     The allegations in Paragraph 15 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations in Paragraph 15  of the Complaint to the extent they are inconsistent with or contrary to the terms of the TCPA.**

16.     A court may award treble damages for a willful or knowing violation of 47 U.S.C. § 227(b)(1)(A)(iii). *Id.*

**ANSWER:     The allegations in Paragraph 16 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's admits only that the TCPA authorizes damages in excess of $500.00 and up to $1,500.00 under certain circumstances and denies the remaining allegations as stated in Paragraph 16 of the Complaint, including that any damages are warranted in this case.**

17.     Congress gave the Federal Communications Commission ("FCC") broad authority to prescribe regulations implementing the restrictions on the use of autodialers. 47 U.S.C. § 227(b)(2).

**ANSWER:     The allegations in Paragraph 17 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations as stated in Paragraph 17 of the Complaint.**

18.     In 2003, the FCC described "predictive dialers" as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take those calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers...the Commission finds that a predictive dialer falls within

6

the meaning and statutory definition of an [ATDS]..." *2003 TCPA Order*, 18 FCC Rcd 14014, ¶131-133.

**ANSWER:    The allegations in Paragraph 18 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations in Paragraph 18 of the Complaint to the extent they are inconsistent with or contrary to the 2003 TCPA Order.**

19.    The FCC determined that a "predictive dialer" falls within the definition of an ATDS under the TCPA. *Id*.

**ANSWER:    The allegations in Paragraph 19 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the allegations in Paragraph 19 of the Complaint to the extent they are inconsistent with or contrary to the 2003 TCPA Order.**

20.    The FCC explains that if a representative is not "free to take a call that has been placed by a predictive dialer, the consumer answers the phone only to hear 'dead air' or a dial tone, causing frustration." *Id* at 14022.

**ANSWER:    Conn's denies the allegations in Paragraph 20 of the Complaint to the extent they are inconsistent with or contrary to the actual quote in the 2003 TCPA Order and otherwise denies the remaining allegations.**

21.    The TCPA places prohibitions on companies that "abandon" calls by setting "the predictive dialers to ring for a very short period of time before disconnecting the call." *Id*

**ANSWER:    The allegations in Paragraph 21 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies**

the allegations in Paragraph 20 of the Complaint to the extent they are inconsistent with or contrary to the 2003 TCPA Order.

22.     No party petitioned for review of the FCC's inclusion of predictive dialers in the definition of an ATDS following the *2003 TCPA Order* or the order denying reconsideration.

**ANSWER:   Conn's lacks information sufficient to respond to the allegations in Paragraph 22 of the Complaint and, therefore, denies them.**

23.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 92-90, 23 FCC Rcd. 559, 566 (2008).

**ANSWER:   The allegations in Paragraph 23 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the substance of the allegations as stated in Paragraph 23 of the Complaint and otherwise denies them to the extent they are inconsistent with or contrary to the actual language in the matter identified in Paragraph 23 of the Complaint.**

24.     In 2012, the FCC again revisited the definition of an ATDS and reemphasized that the term ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention..." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling*, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012).

**ANSWER:   The allegations in Paragraph 24 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Conn's denies the substance of the allegations as stated in Paragraph 24 of the Complaint and otherwise**

denies them to the extent they are inconsistent with or contrary to the actual language in the matter identified in Paragraph 24 of the Complaint.

> **B.**    *Background facts about Conn's.*

25.    CI is a publicly traded company whose stock is registered and traded on the NASDAQ Global Select Market.

**ANSWER:    CI admits the allegations in Paragraph 25 of the Complaint.  The remaining defendants have no response to the allegations in Paragraph 25 of the Complaint because they are not directed at them.**

26.    Defendants operate under the assumed business names "Conn's" and "Conn's HomePlus" which are trademarks owned by CI. CI also owns the trademarks "YES Money" and "YE$ Money."

**ANSWER:    Admit.**

27.    Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, CI is required to prepare annual reports ("Form 10-K") and file each Form 10-K with the United States Securities Exchange Commission ("SEC").

**ANSWER:    The allegations in Paragraph 27 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, CI admits the allegations in Paragraph 27 of the Complaint.  The remaining defendants have no response to the allegations in Paragraph 27 of the Complaint because they are not directed at them.**

28.    CI prepares and files a Form 10-K with the SEC annually and each Form 10-K, and all amendments (if applicable), that CI has prepared and submitted to the SEC can be accessed and viewed through the SEC website.

**ANSWER:   CI admits the allegations in Paragraph 28 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 28 of the Complaint because they are not directed at them.**

29.     Each Form 10-K prepared by CI and all amendments (if applicable) from 2004 to present can also be accessed and viewed on Defendant's website.

**ANSWER:   CI admits the allegations in Paragraph 29 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 29 of the Complaint because they are not directed at them.**

30.     Each Form 10-K prepared by CI and all amendments (if applicable) are executed by members of the Board of Directors of CI, on behalf of CI.

**ANSWER:   CI admits only that each of its Form 10-K is signed by at least a majority of the Board of Directors.   CI denies that amendments are required to be signed by members of the Board.   The remaining defendants have no response to the allegations in Paragraph 30 of the Complaint because they are not directed at them.**

31.     Upon information and belief, execution of a Form 10-K, or an amendment to Form 10-K (if applicable), by a member of the Board of Directors of CI is a representation by the executing member that the information and data disclosed and presented therein is true and accurate.

**ANSWER:   The allegations in Paragraph 31 of the Complaint state conclusions of law to which no response is required.   To the extent a response is required, CI denies the allegations as stated in Paragraph 31of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 31 of the Complaint because they are not directed at them.**

10

32.     In its Form 10-K for the fiscal year ended January 31, 2015, CI states each of the following:

a)      "Unless the context otherwise indicates, references to 'Conn's,' the `Company,' we, "us,' and 'our' refer to the consolidated business operations of Conn's, Inc. and its wholly-owned subsidiaries."

b)      "Conn's is a leading specialty retailer that offers a broad selection of quality, branded durable consumer goods and related services in addition to a proprietary credit solution for its core credit constrained consumers."

c)      "We operate two reportable segments: retail and credit."

d)      "A significant portion of our customer credit portfolio is due from customers that are considered higher-risk, subprime borrowers."

e)      "A large portion of our credit portfolio is to customers considered to be sub-prime borrowers, who have limited credit history, low income or past credit problems. Entering into credit arrangements with such customers entail a higher risk of customer default, higher delinquency rates and higher losses than extending credit to more creditworthy customers. While we believe that our pricing and the underwriting criteria and collection methods we employ enable us to manage the higher risks inherent in issuing credit with sub-prime customers, no assurance can be given that such pricing, criteria and methods will afford adequate protection against such risks. We have experienced volatility in delinquency and charge-off rates on our credit contracts. Payments on some of our credit accounts become delinquent from time to time, and some accounts end up in default, due to several factors, such as general and local economic conditions, including the impact of rising interest rates and unemployment rates. As we continue to expand into new markets, we will obtain new credit accounts that may present a higher risk than our existing credit accounts since new credit customers do not have an established credit history with us."

f)      "Our liquidity position and profitability are heavily dependent on our ability to collect our customer receivables. If our customer receivables portfolio were to substantially deteriorate, the liquidity available to us would most likely be reduced due to the challenges of complying with the covenants and borrowing base calculations under our revolving credit facility and our earnings may decline due to higher provisions for bad debt expense, higher servicing costs, higher net charge-off rates and lower interest and fee income."

g)      "Our ability to operate our business from day to day, in particular our ability to manage our credit operations and inventory levels, largely depends on the efficient operation of our computer hardware and software systems."

11

**ANSWER:   CI denies the allegations in Paragraph 32 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10-K identified in Paragraph 32 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 32 of the Complaint because they are not directed at them.**

*C.   Conn's autodialer registration and confirmation of use of an autodialer.*

33.   Texas Utility Code § 55.121 defines an "automatic dial announcing device"

("ADAD") as, "automated equipment used for telephone solicitation or collection that can:

> "(A) store telephone numbers to be called or produce numbers to be called through use of a random or sequential number generator; and
>
> "(B) convey, alone or in conjunction with other equipment, a prerecorded or synthesized voice message to the number called without the use of a live operator."

**ANSWER:   Conn's denies the allegations in Paragraph 33 of the Complaint to the extent they are inconsistent with or contrary to the terms of the statute identified in Paragraph 33 of the Complaint.**

34.   The definition of an ATDS under the TCPA is coextensive with the definition of an ADAD under Texas Utility Code § 55.121, except that an ADAD includes the added feature of having the capacity to "convey, alone or in conjunction with other equipment, a prerecorded or synthesized voice message."

**ANSWER:   The allegations in Paragraph 34 of the Complaint state conclusions of law to which no response is required.   To the extent a response is required, Conn's denies the allegations.**

35.   Texas Utility Code § 55.130(a) states, "A person may not use an automated dial announcing device without a permit issued by the [Public Utilities Commission of Texas]."

12

**ANSWER:     Conn's denies the allegations in Paragraph 35 of the Complaint to the extent they are inconsistent with or contrary to the terms of the Texas Utility Code.**

36.     Since at least 2006, CAI and CCC have maintained permits issued by the Public Utility Commission of Texas ("PUCT") to use an ADAD.

**ANSWER:     Conn's denies the allegations as stated in Paragraph 36 of the Complaint.**

37.     In its Form 10-K for the fiscal year ended January 31, 2008, CI stated:

    a)     "We maintain a predictive dialer system and letter campaign that helps us contact between 25,000 and 30,000 delinquent customers daily."

    b)     "We employ Nortel telephone switches and state of the art Avaya predictive dialers, as well as a redundant data network and cable plant, to improve the efficiency of our collection and overall corporate communication efforts."

**ANSWER:     CI denies the allegations in Paragraph 37 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10-K identified in Paragraph 37 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 37 of the Complaint because they are not directed at them.**

38.     Attached hereto as Exhibit 1 are true and accurate copies of ADAD Registrations submitted to the PUCT by the predecessors of CAI and CCC in 2008.

**ANSWER: CAI and CCC admit only that its respective predecessors-in-interest submitted the documents attached as Exhibit 1 to the Complaint to the PUCT in 2008 and deny that the submission of the documents means either defendant actually uses, or used an ADAD.  CI has no response to the allegations in Paragraph 38 of the Complaint because they are not directed at it.**

39.     In its Form 10-K for the fiscal year ended January 31, 2009, CI stated:

13

a)  "We maintain a predictive dialer system and letter campaign that helps us contact between 30,000 and 35,000 delinquent customers daily."

b)  "We employ Nortel telephone switches and state of the art Avaya predictive dialers, as well as a redundant data network and cable plant, to improve the efficiency of our collection and overall corporate communication efforts."

**ANSWER:    CI denies the allegations in Paragraph 39 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10-K identified in Paragraph 39 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 39 of the Complaint because they are not directed at them.**

40.    Attached hereto as Exhibit 2 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2009.

**ANSWER:    CAI and CCC admit only that they submitted their respective applications attached as Exhibit 2 to the Complaint to the PUCT in 2009 and deny that the submission of the documents means either defendant actually uses or used an ADAD.   CI has no response to the allegations in Paragraph 40 of the Complaint because they are not directed at it.**

41.    It its Amended Form 10-K for the fiscal year ended January 31, 2010, CI stated:

a)  "We maintain a predictive dialer system, including virtual collection systems, and letter campaign that helps us contact over 35,000 delinquent customers daily."

b)  "We employ Nortel telephone switches and state of the art Avaya predictive dialers, as well as a redundant data network and cable plant, to improve the efficiency of our collection and overall corporate communication efforts."

**ANSWER:    CI denies the allegations in Paragraph 41 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10-K identified in**

**Paragraph 41 of the Complaint.  The remaining defendants have no response to the allegations in Paragraph 41 of the Complaint because they are not directed at them.**

42.     Attached hereto as Exhibit 3 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2010.

**ANSWER:   CAI and CCC admit only that they submitted their respective applications attached as Exhibit 3 to the Complaint to the PUCT in 2010 and deny that the submission of the documents means either defendant actually uses or used an ADAD.  CI has no response to the allegations in Paragraph 42 of the Complaint because they are not directed at it.**

43.     In its Form 10-K for the fiscal year ended January 31, 2011, CI stated:

a)      "We employ an intensive credit collection strategy that includes dialer-based calls, virtual calling and messaging systems..."

b)      "We maintain a predictive dialer system, including virtual collection systems, and letter campaign that helps us contact and speak to over 26,000 delinquent customers daily."

c)      "We employ Nortel telephone switches and Avaya predictive dialers, as well as a redundant data network and cable plant, to improve the efficiency of our collection and overall corporate communication efforts."

**ANSWER:   CI denies the allegations in Paragraph 43 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10-K identified in Paragraph 43 of the Complaint.  The remaining defendants have no response to the allegations in Paragraph 43 of the Complaint because they are not directed at them.**

44.     Attached hereto as Exhibit 4 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2011.

**ANSWER:   CAI and CCC admit only that they submitted their respective applications attached as Exhibit 4 to the Complaint to the PUCT in 2011 and deny that the**

**submission of the documents means either defendant actually uses or used an ADAD. CI**

**has no response to the allegations in Paragraph 44 of the Complaint because they are not**

**directed at it.**

45.     In its Form 10-K for the fiscal year ended January 31, 2012, CI stated:

a)      "We employ an intensive credit collection strategy that includes dialer-based calls, virtual calling and messaging systems..."

b)      "In addition to our underwriting personnel, as of January 31, 2012, we employed approximately 360 people in our collections department who service 100% of our active customer credit portfolio... We employ an intensive credit collection strategy that includes dialer-based calls, virtual calling and messaging systems..."

c)      "We maintain a predictive dialer system, including virtual collection systems, and letter campaigns that help us contact and speak to customers daily."

d)      "We employ Nortel telephone switches and a Noble Systems hosted predictive dialer, as well as a redundant data network and cable plant, to improve the efficiency of our collection and overall corporate communication efforts."

**ANSWER:    CI denies the allegations in Paragraph 45 of the Complaint to the**

**extent they are inconsistent with or contrary to the terms of the 10k identified in**

**Paragraph 45 of the Complaint.   The remaining defendants have no response to the**

**allegations in Paragraph 45 of the Complaint because they are not directed at them.**

46.     Attached hereto as Exhibit 5 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2012.

**ANSWER:    CAI and CCC admit only that they submitted their respective**

**applications attached as Exhibit 4 to the Complaint to the PUCT in 2012 and deny that the**

**submission of the documents means either defendant actually uses or used an ADAD. CI**

has no response to the allegations in Paragraph 46 of the Complaint because they are not directed at it.

47.     In 2012, Conn's added a Noble Systems predictive dialer to its dialer systems. Theodore Wright, Conn's CEO at the time stated, "We are pleased to be working with Noble Systems...Once it is fully implemented the new system will help us improve the effectiveness of our dedicated, in-house collection operations."

**ANSWER:   Conn's admits only that in 2011 CAI purchased equipment ("Equipment") and services from Noble Systems Corporation ("Noble") and that the statement attributed to Mr. Wright in Paragraph 47 of the Complaint appears in the article cited in footnote 9 of the Complaint, and denies the remaining allegations of Paragraph 47 of the Complaint.**

48.     In its Form 10-K for the fiscal year ended January 31, 2013, CI stated:

a)     "...as of January 31, 2013, we employed approximately 325 people in our collections department who service our active customer credit portfolio. We also utilize a third-party collection agency to service a portion of our active portfolio...We employ an intensive credit collection strategy that includes dialer-based calls, virtual calling and messaging systems, inside collectors that contact borrowers at phone numbers they provide..."

b)     "We maintain a predictive dialer system, including virtual collection systems..."

**ANSWER:   CI denies the allegations in Paragraph 48 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10k identified in Paragraph 48 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 48 of the Complaint because they are not directed at them.**

49.     Attached hereto as Exhibit 6 are true and accurate copies of ADAD Registrations submitted to the PUCT by CCC in 2013.

17

**ANSWER:   CAI and CCC admit only that they submitted their respective applications attached as Exhibit 6 to the Complaint to the PUCT in 2013 and deny that the submission of the documents means either defendant actually uses or used an ADAD.   CI has no response to the allegations in Paragraph 49 of the Complaint because they are not directed at it.**

50.     In its Form 10-K for the fiscal year ended January 31, 2014, CI stated:

a)      "...as of January 31, 2014, we employed approximately 530 people in our collections department who service our active customer credit portfolio."

b)      "We employ an intensive credit collection strategy that includes dialer-based calls, virtual calling and messaging systems..."

c)      "We maintain a dialer system, including virtual collection systems..."

**ANSWER:   CI denies the allegations in Paragraph 50 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10k identified in Paragraph 50 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 50 of the Complaint because they are not directed at them.**

51.     Attached hereto as Exhibit 7 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2014.

**ANSWER:   CAI and CCC admit only that they submitted their respective applications attached as Exhibit 6 to the Complaint to the PUCT in 2014 and deny that the submission of the documents means either defendant actually uses or used an ADAD.   CI has no response to the allegations in Paragraph 51 of the Complaint because they are not directed at it.**

52.     Conn's registered its Noble Systems dialer with the PUCT for the first time in 2014.

18

**ANSWER:   Conn's admits only that CAI and CCC registered the Equipment from Noble with the PUCT in 2014 for the first time and denies the remaining allegations as stated in Paragraph 52 of the Complaint, including any allegation that the Equipment was required to be registered before 2014.**

53.     In its Form 10-K for the fiscal year ended January 31, 2015, CI stated:

      a)    "We employed over 700 individuals in our collections department who service our active customer credit portfolio. We also utilize collection agencies to service portions of our active and charged-off portfolio, which provide approximately 130 additional agents located in Phoenix, Arizona."

      b)    "We employ a credit collection strategy that includes dialer-based calls, virtual calling and messaging systems, inside collectors that contact borrowers, collection letters, e-mails, and text messages..."

**ANSWER:   CI denies the allegations in Paragraph 53 of the Complaint to the extent they are inconsistent with or contrary to the terms of the 10k identified in Paragraph 53 of the Complaint.   The remaining defendants have no response to the allegations in Paragraph 53 of the Complaint because they are not directed at them.**

54.     Attached hereto as Exhibit 8 are true and accurate copies of ADAD Registrations submitted to the PUCT by CAI and CCC in 2015.

**ANSWER:   CAI and CCC admit only that they submitted their respective applications attached as Exhibit 8 to the Complaint to the PUCT in 2015 and deny that the submission of the documents means either defendant actually uses or used an ADAD.   CI has no response to the allegations in Paragraph 54 of the Complaint because they are not directed at it.**

55.     Conn's registered and used the ADADs identified in **Exhibit 8** during 2015.

**ANSWER:   Conn's admits only that CAI used the Noble Equipment in 2015 to assist in making telephone calls to customers to collect receivables and denies the**

**remaining allegations in Paragraph 55 of the Complaint, including that any defendant used**

**the other equipment or software identified in Exhibit 8 to the Complaint to make telephone**

**calls.**

56.     Given the number of delinquent customers Conn's contacts daily and the number of individuals employed in Conn's collections department, it would be impossible for Conn's representatives to manually dial the telephone numbers of customers that Conn's was attempting to reach.

**ANSWER:   Denied.**

**D.     *Conn's unauthorized calls to Plaintiff's cellular telephone*.**

57.     Beginning in late 2014 or early 2015, Conn's began to place telephone calls to Plaintiff's cellular telephone, number 817-XXX-8459.

**ANSWER:    CI and CCC deny the allegation that they called telephone number 817-XXX-8459 ("Telephone Number") and, therefore, deny the allegations directed at it as stated in Paragraph 57 of the Complaint.  CAI admits only that it first called the Telephone Number on February 28, 2015, and thus denies the remaining allegations in Paragraph 57 about when it first called the Telephone Number.  Answering further, Conn's lacks information sufficient to respond to the remaining allegations of Paragraph 57 of the Complaint.**

58.     Plaintiff pays a third-party provider for her cellular phone service in order to be able to send and receive calls.

**ANSWER:   Conn's lacks information sufficient to respond to the allegations in Paragraph 58 of the Complaint and, therefore, denies them.**

59.     At all times referenced herein, Conn's called Plaintiff's cellular telephone using an artificial or prerecorded voice and/or an "automatic telephone dialing system" ("ATDS").

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 59 of the Complaint and, therefore, denies same.  CAI lacks information sufficient to respond to the allegation about whether the Telephone Number was actually associated with a cell phone when it called it and denies the remaining allegations as stated in Paragraph 59 of the Complaint.**

60.     Upon information and belief, Conn's collection department representatives reached Plaintiff using the dialer systems the Conn's has registered with the PUCT and that Conn's refers to in its Form 10-Ks.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 60 of the Complaint.  CAI admits only that it used the Noble Equipment to call the Telephone Number and lacks information sufficient to respond to the remaining allegations as stated in Paragraph 60 of the Complaint.**

61.     Conn's called Plaintiff from various telephone numbers, which would change daily.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 61 of the Complaint.  CAI admits that it called the Telephone Number, but denies the remaining allegations as stated in Paragraph 61 of the Complaint.**

62.     On occasions when Plaintiff answered the calls from Conn's she would hear an artificial or prerecorded voice message that would provide an instruction to stay on the line for an "important" matter. After a period of silence, a representative would be connected to the call.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number.  CAI admits only that it called the Telephone Number.  Answer further, CI, CCC and CAI lack information sufficient to respond to the remaining allegations in Paragraph 62 of the Complaint and, therefore, deny them.**

63.     On those occasions when Plaintiff spoke to a representative of Conn's, the representative would announce that they were seeking an individual named "Ashley" and that there was a balance that was past due.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number.  CAI admits only that it called the Telephone Number.  Answer further, CI, CCC and CAI lack information sufficient to respond to the remaining allegations in Paragraph 63 of the Complaint and, therefore, deny them.**

64.     When Plaintiff was connected to a live representative of Conn's, she could hear the chatter of a call center in the background.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number.  CAI admits only that it called the Telephone Number.  Answer further, CI, CCC and CAI lack information sufficient to respond to the remaining allegations in Paragraph 64 of the Complaint and, therefore, deny them.**

65.     On some days, Conn's call activity was more egregious than others, with more than 10 calls being placed to Plaintiff's cellular telephone in a single day.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 65 of the Complaint.   CAI admits that it called the Telephone Number, but denies the remaining allegations as stated in Paragraph 65 of the Complaint.**

66.    Plaintiff advised Conn's representatives that she does not know the individual that Conn's was seeking. Nevertheless, Conn's continued to call Plaintiff's cellular telephone.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 66 of the Complaint.   CAI admits that:  (i) it called the Telephone Number, (ii) the female who answered a call stated that she did not know the person CAI intended to call, and (iii) it continued to call the Telephone Number.   Answering further, Conn's lacks information sufficient to respond to the remaining allegations of Paragraph 66 of the Complaint.**

67.    Plaintiff advised Conn's representatives that Conn's had the wrong phone number and asked that her number be removed. Nevertheless, Conn's continued to call Plaintiff's cellular telephone.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 67 of the Complaint.   CAI denies that Plaintiff asked it remove to the Telephone Number. Answering further, CAI admits that (i) it called the Telephone Number, (ii) the female who answered a call stated that she did not know the person CAI intended to call, and (iii) it continued to call the Telephone Number.   Answering further, Conn's lacks information sufficient to respond to the remaining allegations of Paragraph 67 of the Complaint.**

23

68.     Plaintiff has instructed Conn's to stop calling her cellular telephone number. Nevertheless, Conn's continued to call Plaintiff's cellular telephone.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 68 of the Complaint.  CAI denies the allegations in Paragraph 68 of the Complaint, including that Plaintiff told it to stop calling the Telephone Number and that she told CAI that it was calling a cell phone.**

69.     Conn's collection department representatives have advised individuals that: Despite requests to stop calling, collection calls continue automatically through Conn's systems until the debt that Conn's is attempting to collect is paid in full.

**ANSWER:     Denied.**

70.     Plaintiff does not know how Conn's acquired her cellular telephone number.

**ANSWER:     Conn's lacks information sufficient to respond to the allegations in Paragraph 70 of the Complaint and, therefore, denies them.**

71.     Plaintiff has never provided Conn's with express consent to place calls to her cellular telephone number.

**ANSWER:     Conn's lacks information sufficient to respond to the allegations in Paragraph 71 of the Complaint and, therefore, denies them.**

72.     Due to the continued invasion of privacy and annoyance of the calls from Conn's, Plaintiff downloaded a mobile application on Plaintiff's cellular telephone in order to stop her phone from ringing every time that Conn's called. Plaintiff paid a monthly service fee to use the mobile application.

24

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and CAI denies that any calls it made to the Telephone Number invaded Plaintiff's privacy.  Answering further, Conn's lacks information sufficient to respond to the remaining allegations in Paragraph 72 of the Complaint and, therefore, denies them.**

73.     On or about September 18, 2015, Plaintiff's counsel sent Conn's a letter advising Conn's that it was in violation of the TCPA and that Plaintiff demanded that the calls stop. Nevertheless, the calls continued through at least September 28, 2015.

**ANSWER:   Conn's lacks information sufficient to know when a letter dated September 18, 2015 ("Letter") was sent from Samuel Eastman to CI and thus deny that allegation and the implication that CI received the letter on September 18, 2015 or shortly thereafter.  Answering further, the letter is the best evidence of what Plaintiff's counsel told CI in the Letter and thus Conn's denies the allegations concerning the terms of the Letter as stated in Paragraph 73 to the extent they are inconsistent with or contrary to actual terms of the Letter.  Regarding calls, CAI last called the Telephone Number on September 28, 2015 and no calls were placed to the Telephone Number after Conn's had actual knowledge of the Letter. .  All remaining allegations are denied.**

74.     Attached hereto as Exhibit 9 is a list of 720 calls that were made by Conn's to Plaintiff's cellular telephone between February 28, 2015 and September 28, 2015. The time stated for each call is stated in Central Daylight Time and based on the time on Plaintiff's cellular telephone when the calls were received.

**ANSWER:   Conn's lacks information sufficient to respond to the allegations in Paragraph 74 of the Complaint and, therefore, denies them.**

75.     Upon information and belief, each of the telephone numbers stated on Exhibit 9 is, or was, registered to Conn's and/or used by Conn's at the relevant date of each call.

**ANSWER:    CAI admits only that the telephone numbers identified on Exhibit 9 to the Complaint are associated with it and denies the remaining allegations of Paragraph 75 of the Complaint.**

76.     In addition to those calls reflected in Exhibit 9, Conn's made other calls to Plaintiff's cellular telephone.

**ANSWER:    Conn's lacks information sufficient to respond to the allegations in Paragraph 76 of the Complaint and, therefore, denies those allegations.**

77.     Defendants have previously been sued for violations of the TCPA virtually identical to those alleged by Plaintiff.

**ANSWER:    CI and CAI admit only that they have previously been named as a defendant in at least one TCPA, and deny the remaining allegations in Paragraph 77 of the Complaint.  CCC denies the allegations.**

78.     One or more of the Defendants presently has other lawsuits pending against them in which the Plaintiff(s) therein have asserted violations of the TCPA.

**ANSWER:    Admit.**

79.     Conn's has a corporate policy of using an ATDS and/or a prerecorded or artificial voice message to collect debts from individuals.

**ANSWER:    CAI admits only that it uses prerecorded or artificial voice messages for collection calls being placed to telephone numbers CAI understands are associated with a landline or a cell phone for which consent to call has been obtained and denies the remaining allegations in Paragraph 79 of the Complaint.   CI and CCC do not place**

26

**collection calls and thus deny the allegations in Paragraph 79 of the Complaint directed at them.**

80.     Conn's collection procedures and systems are structured to continue to place calls to debtors, despite the called party explaining to Conn's that they do not wish to be called anymore.

**ANSWER:     CAI denies the allegations in Paragraph 80 of the Complaint.  CI and CCC do not place collection calls and thus deny the allegations directed at them.**

<u>**COUNT I**</u>
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT —**
**47 U.S.C. § 227**

81.     Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

**ANSWER:     Conn's incorporates and restates its responses to the prior allegations of the Complaint.**

82.     At all times mentioned herein, and within four years prior to the filing of this action, Conn's called Plaintiff on her cellular telephone no less than 720 times and in each call, Conn's used an ATDS and/or a prerecorded or artificial voice.

**ANSWER:     CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 82 of the Complaint.  CAI denies the allegations contained in Paragraph 82 of the Complaint.**

83.     Plaintiff's telephone number called by Conn's was assigned to a cellular telephone service.

**ANSWER:     CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 83 of the**

**Complaint.  CAI admits it called the Telephone Number and lacks information sufficient to respond to the remaining allegations in Paragraph 83 of the Complaint.**

84.    The calls from Conn's to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 84 of the Complaint.  CAI admits that none of the calls it placed to the Telephone Number were placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).**

85.    Calls that Conn's placed to Plaintiff's cellular telephone number violated the TCPA.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 85 of the Complaint.  CAI denies that the calls it made to the Telephone Number violated the TCPA and lacks knowledge sufficient to respond to the remaining allegations in Paragraph 85 of the Complaint.**

86.    Conn's continually harassed Plaintiff with the unauthorized calls and Plaintiff suffered an invasion of her privacy and a loss of her privacy as a result of Conn's actions.

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 86 of the Complaint.  CAI denies the allegations in Paragraph 86 of the Complaint.**

87.    Plaintiff incurred actual damages as a result of Conn's violations of the TCPA.

**ANSWER:   Conn's denies the allegations in Paragraph 87 of the Complaint, including that the TCPA was violated.**

28

88.    Despite Plaintiff advising Conn's that Conn's had the wrong number and directing Conn's to cease all calls to her cellular telephone, Conn's continued to place telephone calls to Plaintiff's cellular telephone. Each such call placed to Plaintiff was made in knowing and/or willful violation of the TCPA, and subject to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C)•

**ANSWER:    CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 88 of the Complaint.  CAI denies that it violated the TCPA and thus denies Plaintiff is entitled to any damages.**

89.    Plaintiff is entitled to an order enjoining any further violation of 47 U.S.C. § 227(b)(1)(A)(iii) pursuant to 47 U.S.C. § 227(b)(3).

**ANSWER:    Conn's denies the allegations in Paragraph 89 of the Complaint.**

90.    As a result of each call made by Conn's in negligent violation of the TCPA, Plaintiff is entitled to an award of the greater of actual damages or $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

**ANSWER:    CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 90 of the Complaint.  CAI denies the allegations in Paragraph 90 of the Complaint.**

91.    As a result of each call made by Conn's in knowing and/or willful violation of the TCPA, Plaintiff is entitled to an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**ANSWER:   CI and CCC deny the allegation that they called the Telephone Number and, therefore, deny the allegations directed at it as stated in Paragraph 91 of the Complaint.  CAI denies the allegations in Paragraph 91 of the Complaint.**

<u>COUNT II</u>
**VIOLATIONS OF TEX. BUS. & COM. CODE, CHAPTER 305.**

92.    Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

**ANSWER:   Conn's incorporates and restates its responses to the prior allegations of the Complaint.**

93.    Plaintiff is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

**ANSWER:   Conn's admits the allegations in Paragraph 93 of the Complaint.**

94.    Defendants are each a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

**ANSWER:   Conn's admits the allegations in Paragraph 94 of the Complaint.**

95.    Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

**ANSWER:   Conn's denies the allegations in Paragraph 95 of the Complaint to the extent they are inconsistent with or contrary to terms of the Texas Business & Commerce Code or any case law interpreting it.**

96.     Plaintiff is entitled to a temporary injunction and a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

**ANSWER:     Conn's denies the allegations in Paragraph 96 of the Complaint.**

97.     Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiff is entitled to the greater of $500.00 for each violation or Plaintiffs actual damages for each call negligently made by Conn's.

**ANSWER:     Conn's denies the allegations in Paragraph 97 of the Complaint.**

98.     Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiff is entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiffs actual damages for each violation by Conn's that the Court finds was made knowingly or intentionally.

**ANSWER:     Conn's denies the allegations in Paragraph 98 of the Complaint.**

<u>REQUEST FOR RELIEF</u>

**Conn's denies that Plaintiff is entitled to the relief requested.**

<u>SPECIFIC DENIALS AND AFFIRMATIVE DEFENSES</u>

1.     Plaintiff lacks Article III standing under the United States Constitution.

2.     Plaintiff's claims under the TCPA are barred by the First Amendment to the United States Constitution because, *inter alia*:

> a.   the TCPA, as applied in this case, is an impermissible restraint on commercial speech in that it does not serve a significant government interest, does not directly advance any government interest asserted, and restricts commercial speech that is neither misleading nor in service of unlawful activity more than necessary; and

> b.   the FCC's interpretation of an ATDS is unconstitutionally vague.

31

3.      Plaintiff's claims are barred, in whole or in part, by the doctrine of de minimis harm because the actual harm allegedly suffered is negligible.

4.      Plaintiff has failed to take reasonable steps to mitigate her alleged damages, delayed unreasonably in doing so, or has taken steps that have exacerbated her alleged damages.

5.      Plaintiff's claims are barred under the doctrine of laches because she has unreasonably delayed efforts to enforce her rights, if any, despite full awareness of the alleged actions of Defendants.

6.      Plaintiff's claims are barred under the equitable doctrine of unclean hands.

7.      The claims in the Complaint are barred, in whole or in part, because any violation of law, which is specifically denied, was not intentional, not willful or knowing, and resulted from a good-faith error or mistake.

8.      With respect to Plaintiff's claim for damages, Conn's incorporates all limitations on damage awards arising from the decisions in *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Auto Ins. Co. v. Campbell*, 537 U.S. 1042 (2003).

9.      To the extent any of the violations alleged by Plaintiff are based on acts occurring after the applicable statutes of limitation expired, Plaintiff's claims are barred in whole or in part.

10.     Plaintiff's request for damages for the same conduct under two statutes is prohibited by the one-satisfaction rule.

Conn's requests that Plaintiff's Complaint be dismissed, that Plaintiff recovers nothing, that costs and attorney's fees are assessed against Plaintiff, and for such other and further relief to which Conn's may be  entitled.

Dated:  March 4, 2016                    Respectfully submitted,

By: */s/Robert M. Horwitz*
      Robert M. Horwitz  (P51466)
      DYKEMA GOSSETT PLLC
      400 Renaissance Center, 36th Floor
      Detroit, MI  48243
      Phone: (313) 568-5384
      rhorwitz@dykema.com

      Mark J. Barrera
      Texas Bar No. 24050258
      mbarrera@dykema.com
      Amber L. Jordan
      New York Bar No. 4942173
      ajordan@dykema.com
      Dykema Cox Smith
      112 E. Pecan Street,
      Suite 1800
      San Antonio, Texas 78205
      (210) 554-5500
      (210) 226-8395 (Fax)

      *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on March 4, 2016, I filed the foregoing Original Answer of Defendants to Plaintiff's First Amended Complaint and Application for Temporary Injunction and Permanent Injunction electronically, using the Court's CM-ECF system, which will automatically send a copy of this filing to all persons who are registered to receive court filings in this action.

_/s/ Robert M. Horwitz_____
Robert M. Horwitz

4819-4386-1806.2
112822\000002